UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BBC GROUP NV LLC, a Nevada Limited Liability Company,<br><br>    Plaintiff,<br>    Counterclaim Defendant,<br><br>        v.<br><br>ISLAND LIFE RESTAURANT GROUP LLC, *et al.*,<br><br>    Defendants,<br>    Counterclaim Plaintiffs. | Case No. C18-1011-RSM<br><br>ORDER GRANTING IN PART COUNTERCLAIM PLAINTIFF ISLAND LIFE'S MOTION FOR PERMANENT INJUNCTION |

## I. INTRODUCTION

This matter comes before the Court on Counterclaim Plaintiff Island Life Restaurant Group, LLC ("Island Life")'s Motion for Permanent Injunction. Dkt. #77. Counterclaim Defendant BBC GROUP NV LLC ("BBC") opposes. Dkt. #80. The Court held oral argument on this motion on December 4, 2019. Dkt. #83. Having reviewed the relevant briefing, the exhibits attached thereto, and the remainder of the record, the Court GRANTS IN PART Island Life's Motion for Permanent Injunction.

## II. BACKGROUND

A full background of this case is not necessary given this Court's previous order ruling on the merits of Island Life's claims against BBC. Dkt. #65.

On March 28, 2019, this Court partially granted Island Life's motion for preliminary injunction and enjoined BBC from expanding into western Washington during the pendency of this action. Dkt. #35. The Court found that Island Life would likely suffer substantial and irreparable harm in the form of customer confusion, loss of goodwill, vendor confusion and lost profits unless BBC was enjoined from using the name "BOK BOK" in western Washington. *Id.* at 8.

On September 20, 2019, this Court dismissed all of BBC's claims against Island Life and granted summary judgment on Island Life's counterclaims under the Lanham Act, 15 U.S.C. §§ 1114, 1125. Dkt. #65 at 2. In finding actual confusion between the "BOK BOK" and "Bok a Bok" marks, the Court acknowledged that both parties maintain an active Internet presence that "has led to misdirected emails from marketers, vendors, and potential employees." *Id.* at 18-19. The Court also noted BBC's repeated intention to expand its restaurant chain nationwide, including into California and Washington. *Id.* at 19. However, the Court declined to address the issue of a permanent injunction against BBC without further briefing from the parties. *Id.* at 21-22. The Court will now consider the issue.

Island Life requests a permanent injunction that enjoins BBC from three activities: (1) nationwide use of the unlicensed "BOK BOK" mark and "any other name that includes this chicken sound," including but not limited to "BOC BOC" and "BOQ BOQ"; (2) use of "bokbokchicken" as a domain name for websites or for email or social media accounts; and (3) acquiring any rights to use the third-party "BOCBOC Chicken Delicious" mark, including

requesting or accepting help from the current owner of the third-party mark, Mr. Guang Li. Dkt. #77 at 18.

## III. DISCUSSION

### A. Legal Standard

Under 15 U.S.C. § 1116(a) of the Lanham Act, district courts may "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." In deciding whether to grant permanent injunctive relief, district courts apply traditional principles of equity. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

A plaintiff seeking a permanent injunction must demonstrate four factors: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1138 (9th Cir. 2006). The court must conduct "a fair weighing of the factors listed above, taking into account the unique circumstances of each case," and "consider the totality of circumstances bearing on whether a permanent injunction is appropriate equitable relief." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014).

1. <u>Irreparable Harm</u>

Circuits are split on whether a finding of infringement automatically presumes irreparable harm. *See* Dkt. #77 at 11. However, the Ninth Circuit's controlling precedent in *Herb Reed* makes clear that in this Circuit, the fact of infringement itself is not sufficient to show irreparable

harm—the infringement must somehow cause injury. *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, No. SACV 12-572 JVS EX, 2014 WL 1246497, at *2 (C.D. Cal. Mar. 21, 2014) (citing *Herb Reed Enters.*, 736 F.3d at 1250–51); *see also San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 327 (9th Cir. 2015) ("Irreparable harm may not be based on speculative injury."). Conclusory and factually unsupported allegations are insufficient to establish irreparable harm. *Herb Reed Enters.*, 736 F.3d at 1250.

Here, Island Life's asserted harm falls into three general categories: (i) costs from the litigation; (ii) loss of business reputation and goodwill from vendor confusion; and (iii) lost goodwill from customer confusion. First, Island Life argues that this lawsuit caused it to forfeit properties because of the pending litigation, resulting in lost profits and lost expansion opportunities. Dkt. #77 at 8-9. It also discusses personal injuries to Brian O'Connor, co-owner of Island Life, who was denied a refinance on his home because of the pending litigation and lost his family's insurance coverage. *Id.* at 13. At oral argument, counsel for Island Life argued that the harm from trademark infringement is directly related to harm caused by this lawsuit because BBC's trademark infringement was what caused its lawsuit against Island Life.

This Court finds an important distinction between harm caused by litigation over trademark infringement versus harm caused by the infringement itself. In deciding whether to grant a permanent injunction, courts typically consider only the latter as "irreparable harm" warranting equitable relief. *See, e.g.*, *Herb Reed Enters.*, 736 F.3d at 1249 (citing examples of "irreparable harm" as lost profits, lost customers or lost goodwill). Moreover, Island Life has failed to adequately explain how monetary damages or attorney's fees would be insufficient to compensate for these damages. For these reasons, the Court finds that harm to Island Life or its co-founders because of the litigation does not constitute irreparable harm from trademark infringement warranting a permanent injunction.

Next, Island Life argues that confusion by vendors between "Bok a Bok" and "BOK BOK" has damaged its business reputation and resulted in lost goodwill from vendors. Courts recognize loss of control over business reputation and damage to goodwill as irreparable harm warranting an injunction. *Herb Reed*, 736 F.3d at 1250; *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). In demonstrating vendor confusion, Island Life points to one instance where a California-based vendor, Tito's Transport, confused Island Life with BBC and accused Island Life of failing to pay its bills. *Id.* (citing Dkt. #68-1 at 1). As a result, Island Life argues, it lost goodwill and reputation because of confusion with the "BOK BOK" mark.

This evidence of vendor confusion provides a reasonable basis to preserve the status quo and enjoin BBC from expanding into Washington state, given that confusion by vendors used or potentially used by Island Life would damage Island Life's business reputation and goodwill. However, Island Life has provided no evidence in its briefing or at oral argument that it relies on vendors located outside of the state where all "Bok a Bok" locations operate. As a result, it has failed to demonstrate that it would suffer irreparable harm in the form of lost goodwill or damaged reputation from confusion by vendors located outside of Washington. Although Island Life stated at oral argument that it intends to expand its business outside of Washington, it has provided no indication to the Court of when or where this expansion will occur. For that reason, any future harm suffered by Island Life when it expands outside Washington is merely speculative and therefore insufficient to establish irreparable harm. *Herb Reed Enters.*, 736 F.3d at 1250.

Third, Island Life argues that confusion by customers between "Bok a Bok" and "BOK BOK" will lead customers away from the Washington "Bok a Bok" and damage its goodwill and reputation. Island Life has worked hard to build a positive reputation for "Bok a Bok," which includes a feature on the Food Network's show "Diners, Dives and Drive-In's" that has attracted

visitors from around the country and the world. *See* Dkts. ##68-4, 68-5, 68-6. After the Food Network feature, a Las Vegas food journalist erroneously announced that Seattle's "Bok a Bok" was coming to Las Vegas. Dkt. #28-5 at 10. Because of this exposure, Island Life argues, potential customers will try to seek out "Bok a Bok" but will instead be led to the Las Vegas location. Dkt. #77 at 9. At the same time, it claims that negative reviews or experiences by customers at a Nevada or California "BOK BOK" will deter potential customers from patroning a Washington "Bok a Bok" and cause Island Life to lose customer goodwill. *Id.* Although parties disagree on which restaurant chain has better customer reviews, *compare* Dkt. #77 at 11 *with* Dkt. #80 at 11, there is no dispute that Nevada-based "BOK BOK" has earned some negative online reviews. *See* Dkt. #68-7. Parties also attempt to predict whether customers outside of Washington are more likely led to "BOK BOK" instead of "Bok a Bok," *compare* Dkt. #68 at ¶¶ 4-6 *with* Dkt. #81 at 2-3, but the Court finds neither party's argument persuasive. A person's search results for "bok bok" will vary depending on their location history, individual search history, and other web search analytics. Neither party's searches account for these complex factors.

There is no question that BBC's expansion into Washington would create confusion between the two restaurants that would irreparably harm Island Life's business. Considering the erroneous Las Vegas food journalist article and the fact that people most frequently use the search query "bok bok" to find the Washington "Bok a Bok" restaurant, the nearly-identical names of these restaurants makes customer confusion inevitable if the two chains were to operate in the same state. *See* Dkt. #28-5 at 10; Dkt. #68-2 at 2. This confusion would allow BBC to unfairly capitalize on Island Life's hard-earned goodwill for its Washington restaurants and/or cause Island Life to lose goodwill based on customers' negative reviews or experiences at "BOK BOK." While BBC counters that Yelp reviews for "BOK BOK" are currently better than those for "Bok a Bok," Dkt. #81 at ¶¶ 12-14, the comparative standing of the two restaurants' online reviews is

irrelevant. Island Life has built a business reputation for "Bok a Bok" and acquired goodwill from customers for its Washington restaurants, and the confusing similarity of the unregistered "BOK BOK" mark within Washington would undermine Island Life's ability to control that reputation. *See Stuhlbarg*, 240 F.3d at 841.

However, any harm to Island Life from customer confusion outside of Washington is merely speculative. Island Life relies on *Grasshopper House, LLC v. Clean & Sober Media LLC* to argue that negative reviews for a competing business may constitute irreparable harm. Yet *Grasshopper* addressed a different factual scenario in which a competing business had used a website to post negative reviews about its competitors. *See* 394 F. Supp. 3d 1073, 1099 (C.D. Cal. 2019). It does not stand for the proposition that bad reviews of a restaurant with an infringing mark automatically infer irreparable harm. For Island Life to claim irreparable harm based on BBC's negative reviews, there must be a reasonable basis to assume that negative experiences or online reviews at "BOK BOK" would actually harm "Bok a Bok." Here, the geographic distance between the two restaurants makes it speculative to assume that a customer led to "BOK BOK" in Nevada or California who disliked their experience would be deterred from patroning "Bok a Bok" several states away. Likewise, with respect to the online reviews, Island Life can only speculate that a negative online review for "BOK BOK" in Nevada or California could be misinterpreted for "Bok a Bok" in Washington. It provides no evidence that such customer confusion has occurred, or that customers intending to post negative reviews for "BOK BOK" have inadvertently posted them to "Bok a Bok."

Finally, the Court finds irreparable harm to Island Life caused by BBC's use of the "bokbokchicken.com" domain name. Much of the confusion between "BOK BOK" and "Bok a Bok"—including the very incident that triggered this litigation—appears to stem from parties' nearly identical domain names that they use for their website, email, and social media handles.

ORDER GRANTING IN PART COUNTERCLAIM PLAINTIFF
ISLAND LIFE'S MOTION FOR PERMANENT INJUNCTION - 7

*Compare* Dkt. #31-2 (domain name "bokbokchicken.com") *with* Dkt. #28-5 at 8 (domain name "bokabokchicken.com"). BBC incorrectly states that Island Life's domain name is "bokabok.com," *see* Dkt. #80 at 13-14, but the difference is even more marginal—only a single letter distinguishes the two domain names. BBC also counters that enjoining it from using "bokbokchicken.com" is inappropriate because Island Life has failed to show irreparable harm. Dkt. #80 at 13. The Court disagrees. Here, confusion over the nearly-identical domain names has led Island Life to lose control over its online business reputation. Potential employees have emailed employment applications to the wrong company, Dkt. #28 at ¶ 10, and marketers and vendors have emailed advertising materials and offers to the Washington "Bok a Bok" that were intended for the Nevada "BOK BOK." Dkt. #28-5 at 2-9, 12-14. This loss of control over its online business reputation constitutes irreparable harm warranting permanent relief. *See Herb Reed*, 736 F.3d at 1250; *see Stuhlbarg Intern. Sales Co.*, 240 F.3d at 841.

2. <u>No Adequate Remedy at Law</u>

Analysis of this factor overlaps with analysis of irreparable harm. *See Active Sports Lifestyle USA*, 2014 WL 1246497, at *3. Loss of goodwill and damage to reputation are not easily measured, which favors Island Life's argument that money damages are inadequate if BBC were to expand into Washington state or continue using the nearly identical "bokbokchicken.com" domain name. However, Island Life has only shown speculative harm such as loss of goodwill or damage to reputation from BBC's infringement outside of Washington state. Accordingly, this factor favors a permanent injunction limited to the Washington area and to the domain name "bokbokchicken.com."

3. <u>Balance of Hardships</u>

The balance of hardships weighs strongly in favor of Island Life. Even if BBC suffers financial hardship from a permanent injunction, courts generally give little weight to such

arguments from infringing parties. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F.Supp. 1559, 1574 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997)) ("[W]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration."). Here, BBC infringed on Island Life's mark and exacerbated its own injuries by trying to acquire a third-party mark and suing Island Life instead of simply changing its name. For these reasons, the balance of hardships tips heavily in favor of Island Life.

### 4. Public Interest

Finally, the public interest weighs in favor of granting a permanent injunction for Island Life. In addition to upholding the general public interest in protecting trademarks, an injunction that prevents BBC from expanding into Washington state and enjoins it from using the nearly identical domain name "bokbokchicken.com" would help to avoid confusion between the two restaurants. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."); *see also Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) (injunctive relief helps "to promote the public interest in protecting trademarks generally"). For these reasons, the Court finds that the public interest favors enjoining BBC from using the "BOK BOK" mark within Washington state and from using the confusingly similar "bokbokchicken.com" domain name.

### 5. Weighing of the Factors

Having considered the four factors, the Court finds sufficient basis to enjoin BBC from using the unregistered "BOK BOK" mark, or any variation or derivative thereof, in Washington state and/or as part of a domain name, email account, social media handle, or other form of web presence.

Furthermore, the Court notes that Island Life seeks to enjoin BBC from *any* name that includes the sound a chicken makes, including "BOC BOC" and "BOQ BOQ." Dkt. #77 at 17. However, as this Court acknowledged at summary judgment, *see* Dkt. #65 at 17, a mark that relies exclusively on onomatopoeia without any other distinguishing factors is simply not a strong mark—an unfortunate reality that is apparent from this litigation, the third-party mark "BOCBOC Chicken Delicious," and what the Court imagines are other restaurants, cafeterias, and food trucks that use different iterations of the chicken "Bawk" sound in their name. Island Life has not sufficiently justified its demand to foreclose BBC's use of all possible iterations of the sound a chicken makes, nor has it explained why a domain name spelled with a "C" or "Q" combined with other differentiating terms would fail to resolve the problem of online confusion. For that reason, the Court finds the injunction appropriately limited to BBC's use of the unregistered "BOK BOK" mark and any variation or derivative of that spelling.

**B. Use of Third-Party "BOCBOC Chicken Delicious" Mark**

Island Life also requests that the Court enjoin BBC from acquiring any rights to use the BOCBOC Chicken Delicious name for any purpose relating to restaurants, including assignment or licensing. Dkt. #77 at 18. In dismissing BBC's claims against Island Life, the Court found that BBC had failed to acquire the associated goodwill from the "BOCBOC Chicken Delicious" mark, therefore rendering the assignment invalid. Dkt. #65 at 7. In reaching this conclusion, the Court found no material dispute of fact that BBC's Mediterranean-style restaurants were not "substantially similar" to the New York-based BOCBOC Chicken Delicious restaurants that sell Korean-style fried chicken in food courts. *Id.*

Since the Court's summary judgment order, BBC has attempted to "validate" the assignment by stating its intent to open food trucks and/or restaurants under the "BOCBOC Chicken Delicious" name and serve Korean-style fried chicken similar to that sold at the New

York restaurant. *See* Dkt. #73 at ¶¶ 4-7. BBC has also ordered napkins and banners with the "BOCBOC Chicken Delicious" logo to demonstrate that two restaurant chains are "substantially similar" so as to transfer goodwill and validate the assignment. *Id.* BBC raised this argument on a motion for reconsideration of the Court's summary judgment order, which the Court rejected. Dkt. #74 at 4 ("Although BBC claims that it plans to open restaurants or food trucks under the 'BOCBOC Chicken Delicious' name and sell the same food sold in the New York and New Jersey food courts, it admits that it will take 'roughly 3 months' from now until this plan can be implemented.").

For this reason, Island Life reasonably fears BBC's continued efforts to validate the "BOCBOC Chicken Delicious" assignment in order to invalidate Island Life's "Bok a Bok" mark or otherwise harass Island Life. Island Life is particularly concerned about an expansive cooperation clause in the Trademark Assignment and License Back Agreement ("the Agreement") between Mr. Li and BBC:

> **Assignor agrees to take whatever further action is deemed necessary or appropriate by Assignee to properly and fully effect and perfect the transfer** to Assignee of the Marks, to establish full custody of the Marks by Assignee . . . . Assigner agrees to execute documents or assignments to Assignee regarding the Marks as may be required in proceedings around the world. Assignee further agrees to cooperate in providing documents and information as required by Assignee during the course of any litigation . . . .

Dkt. #29-2 at § 2 (emphasis added). Mr. Li has also agreed to defend and indemnify BBC on any matters relating to the assignment. *Id.* at § 13. Based on this clause, Island Life argues, BBC will continue working with Mr. Li to validate the assignment "so that BBC can flood the west coast with BOCBOC Chicken Delicious restaurants instead of BOK BOK restaurants." Dkt. #77 at 8. Island Life therefore asks this Court to strike the cooperation clause from the Agreement and to enjoin BBC from acquiring the third-party mark from Mr. Li.

While the Court is sympathetic to Island Life's situation, Island Life has provided no legal authority for the Court to enjoin BBC from acquiring a third-party mark. On the contrary, Island Life's counsel clarified at oral argument that it is relying entirely on the Court's equitable powers to enjoin BBC from acquiring the "BOCBOC Chicken Delicious" mark from Mr. Li. The Court is not convinced that its equitable powers provide it with the authority to dictate BBC's business operations. Island Life has provided no explanation for why BBC's effort to acquire a third-party mark is unlawful as opposed to merely unsavory. Indeed, the case law on assignment of third-party marks contemplates that businesses may use assignment to obtain rights to a senior mark so long as they acquire the necessary goodwill to validate the assignment. *See, e.g.*, *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1990); *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969)). For these reasons, while the Court does not condone the maneuvering used by BBC to subvert Island Life's legitimate trademark and draw out this dispute, it finds no appropriate basis to enjoin BBC from acquiring a third-party mark.

## IV.  CONCLUSION

Based on the briefing and parties' presentations at oral argument, the Court finds a reasonable basis to GRANT IN PART Island Life's request for a permanent injunction. It is hereby ORDERED that BBC is enjoined from using the unregistered "BOK BOK" mark, or any variation or derivative of that spelling, in Washington state or as part of a domain name, email account, or social media handle.

DATED this 6th day of December 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE